1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KAREN P. WESCOTT,                    Case No.  1:21-cv-01323-BAM

12            Plaintiff,                  **ORDER REGARDING PLAINTIFF'S
                                          MOTION FOR SUMMARY JUDGMENT
13       v.                               AND DEFENDANT'S CROSS-MOTION
                                          FOR SUMMARY JUDGMENT**
14   COMMISSIONER OF SOCIAL
     SECURITY,                            (Docs. 15, 23)
15
             Defendant.
16

17                            __INTRODUCTION__

18        Plaintiff Karen P. Wescott ("Plaintiff") seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying her application for disability

20   insurance benefits under Title II of the Social Security Act.  The matter is currently before the

21   Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge

22   Barbara A. McAuliffe.[1]

23        Having considered the briefing and record in this matter, the Court finds that the decision

24   of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a

25   whole and based upon proper legal standards.  Accordingly, this Court will deny Plaintiff's

26   motion for summary judgment, grant the Commissioner's cross-motion for summary judgment,

27   ─────────────────

28   [1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case,
     including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 4, 6, 7.)

                                          1

and grant the Commissioner's request to affirm the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for disability insurance benefits on July 1, 2019.  AR 154-60.[2]  Plaintiff alleged she became disabled on July 1, 2018, due to total double hip replacement, right total knee replacement, left knee needing total knee replacement, lower back problems, migraines, joint pain in the hands, and difficulty standing or walking.  AR 174-75.  Plaintiff's applications were denied initially and on reconsideration.  AR 79-83, 90-93.  Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ Brian Crockett issued an order denying benefits on January 13, 2021.  AR 12-25, 30-52.  Thereafter, Plaintiff sought review of the decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

**Relevant Hearing Testimony**

ALJ Crockett held a telephonic hearing on December 16, 2020.  Plaintiff appeared with her attorney, Shellie Lott.  Larry Bell, an impartial vocational expert, also appeared.  AR 32.

Plaintiff testified that she lives with her husband in a tri-level home.  AR 37.  She has a driver's license and, in a typical week, drives once a week to the grocery store.  She usually spends 30 minutes in the store.  She gets little stuff and will wait for her husband or daughter to help with the big shopping.  She is a high school graduate and can read, write, and perform simple math.  AR 37-38.

Plaintiff testified that she receives a retirement pension, along with health insurance.  She has not worked since she retired from the State of California.  AR 39.  She worked in the Department of Corrections accounting unit, taking care of inmate accounts and customer service, distributing payroll checks twice a month to employees.  AR 39-40.  On a typical day, she would spend about four hours a day on her feet during an eight-hour shift.  AR 40.  The heaviest amount she lifted was probably 25 pounds.  AR 40.  When asked by the vocational expert, Plaintiff confirmed, however, that she was sitting six of eight, lifting 25 pounds infrequently, occasional

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

files.  AR 40.  When later asked what percentage of the day she was standing up or walking, Plaintiff testified that at certain times of the month she was on her feet more and certain times of the month she was sitting more, maybe 75 percent.  AR 41.  She testified that people would come to the counter, and she would have to leave her desk, get up and walk to the counter.  She could not control when she would get up to go help.  "It was whenever somebody came in. . . [s]o that could be any time during the day."  AR 41-42.

When asked about her medical issues, Plaintiff testified that walking causes her the most pain.  Her knees and hips are unstable when she walks.  She feels like she is going to fall and uses a cane all the time.  She first stared using a cane in 2015.  She sometimes uses it in the house, but most times just when she is outside.  She has difficulty using stairs.  There are plans for further surgery on her left knee, for a knee replacement.  AR 42-43.  She can walk about 100 feet.  She has difficulty with sitting for long periods.  If she sits for more than half an hour, then her legs start to get antsy, and she needs to get up and move around.  She needs to lie down a lot of time to take the pressure off her back and legs.  AR 43.  She will lie down two or three times a day.  AR 44.

When asked what she thought was her main problem returning to her past work, Plaintiff testified it was the pressure of having to be there and performing the job in pain.  AR 44.  Plaintiff testified that her hands cause her difficulty.  With her arthritis, her thumbs are forming into her palms, so it is hard for her to hold and grip things.  It is hard for her to write and hold a pencil.  AR 44.  She also has weakness on her left side.  When she gets migraines, her whole left side goes numb, her face and her left arm.  AR 44-45.  She gets migraines about two or three times a week lasting two or three hours.  Plaintiff additionally has a diagnosis of obstructive sleep apnea.  She does not sleep well, and has to get up and down all night to readjust. AR 45.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE").  At the outset, the VE testified that Plaintiff's past work was "best described as payroll clerk, sedentary, semi-skilled, SVP 4, 215.382-014."  AR 47.  The ALJ also asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience, who is capable of performing sedentary work

as defined by the regulations, and has the following additional limitations:  could perform all postural movements no more than occasionally; could never climb ladders, ropes, and scaffolds; handling with the right extremity limited to frequent; should avoid concentrated exposure to extreme cold, vibrations and hazards such as unprotected heights or unshielded moving mechanical parts; would need a sit/stand option, which would allow them to briefly, up to two minutes, alternate between the sitting or standing position at 30-minute intervals throughout the workday without breaking the task at hand. AR 47.  The VE testified that this individual could perform Plaintiff's past work.  AR 48.

For the second hypothetical, the ALJ asked the VE to assume the same limitations as the first hypothetical, but reduce the handling limitations to occasional handling with the right upper extremity.  The VE testified that this individual could not perform claimant's past work.  AR 48.

The VE also testified that if an employee reaches a level of missing two or more days per month, the supervisory personnel would attempt an intervention to correct that, and if the intervention proved to be unsuccessful, it would result in termination.  AR 48.  The VE further testified that if an employee reached a level of being off task ten percent or more of the time, this would eliminate competitive work at any level, including Plaintiff's prior work.  AR 48-49.

In response to questions from Plaintiff's attorney, the VE testified that Plaintiff's past work, where for 25 percent of the day she was doing customer service, would not be considered a composite position, because it would be part of other duties as assigned.   When asked how an individual with a sit/stand option for 30-minute intervals up to two minutes at time could remain on task, the VE testified that if 25 percent of the job varying intermittently throughout the day was standing, it would probably take care of it.  When asked whether the payroll clerk as generally performed required getting up to go to the counter to help customers, the VE testified the description did not say anything specifically.  AR 50-51.

**Medical Record**

The medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

4

On January 13, 2021, using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-25. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2018, her alleged onset date. AR 18. The ALJ identified the following severe impairments: status/post right knee arthroscopy; left knee osteoarthritis; lumbar degenerative disc disease; obstructive sleep apnea; obesity; and carpal tunnel syndrome. AR 18. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 18-19.

Based on a review the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except with the following limitations: no climbing ladders, ropes, or scaffolds; could perform all other postural movements occasionally; could frequently handle with the right upper extremity; must avoid concentrated exposure to extreme cold, vibrations, and hazards, such as unprotected heights and dangerous moving mechanical parts; and required a sit/stand option which allow her to briefly, for up to 2 minutes, alternate between sitting or standing at 30 minutes intervals throughout the day without breaking the task at hand. AR 19-24. With this RFC, the ALJ determined that Plaintiff was capable of performing her past relevant work as a payroll clerk as generally performed. AR 24-25. The ALJ therefore concluded that Plaintiff had not been under a disability from July 1, 2018, through the date of the decision. AR 25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the

1   evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995

2   (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the

3   proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This

4   Court must uphold the Commissioner's determination that the claimant is not disabled if the

5   Commissioner applied the proper legal standards, and if the Commissioner's findings are

6   supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d

7   509, 510 (9th Cir. 1987).

8                                          **REVIEW**

9          In order to qualify for benefits, a claimant must establish that he or she is unable to engage

10  in substantial gainful activity due to a medically determinable physical or mental impairment

11  which has lasted or can be expected to last for a continuous period of not less than twelve months.

12  42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental

13  impairment of such severity that he or she is not only unable to do his or her previous work, but

14  cannot, considering his or her age, education, and work experience, engage in any other kind of

15  substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882

16  F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v.*

17  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

18                                      **DISCUSSION**[3]

19         Plaintiff argues that the ALJ erred in the following ways: (1) concluding that she could

20  perform her past relevant work as generally performed because her prior work was a composite

21  job; (2) concluding that the opinion of her treating orthopedist, Dr. Sablan, was not persuasive;

22  (3) failing to provide acceptable reasons for discounting Plaintiff's subjective complaints; and (4)

23  failing to address lay evidence from Plaintiff's family members.

24      **A. Step Four – Past Relevant Work**

25         Plaintiff challenges the ALJ's step four finding that she could perform her past relevant

26  ─────────────────────
    [3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
27  arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any
    specific argument or brief is not to be construed that the Court did not consider the argument or brief.
28

1    work as a payroll clerk (sedentary) as it is generally performed in the national economy.  (Doc.

2    15-1 at 18.)  She argues that the ALJ erred because the "evidence of record documents that [she]

3    performed a composite job as a payroll clerk which entailed not only sedentary duties, as the ALJ

4    found, but also light duties as well."  (*Id.*)  Plaintiff contends that because she was not able to

5    perform that part of her duties at the light exertional level, the ALJ's finding that she could

6    "perform her past relevant work as  payroll clerk 'as generally performed' cannot be sustained."

7    (*Id.*)  In short, Plaintiff asserts that her job as a payroll clerk is appropriately characterized as a

8    composite job, which cannot support past work as generally performed.[4]

9         At step four, a claimant has the burden to prove that she cannot perform her past relevant

10    work "either as actually performed or as generally performed in the national economy." *Stacy v.*

11    *Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th

12    Cir. 2002)); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001)  Although the burden of proof

13    lies with the claimant, the ALJ must still make the requisite factual findings to support the step-

14    four conclusion. *Pinto,* 249 F.3d at 844.

15         To determine how a claimant *actually* performed her work, an ALJ may consider: "(1) the

16    claimant's own testimony, and (2) a properly completed vocational report."  *Thomas v. Kijakazi*,

17    No. 1:22-cv-00200-HBK, 2023 WL 6164087, at *4 (E.D. Cal. Sept. 21, 2023) (quoting *Lewis*,

18    281 F.3d at 1083).  To determine the requirements of occupations as *generally* performed in the

19    national economy, the ALJ may rely on VE testimony or consider information in the Dictionary

20    of Occupational Titles ("DOT").  *See Mejia D. v. O'malley*, No. 2:22-cv-07336-PD, 2024 WL

21    776580, at *4 (C.D. Cal. Feb. 26, 2024) (citing SSR 00–4P, 2000 WL 1898704, at *2 (Dec. 4,

22    2000) and SSR 82–61, 1982 WL 31387, at *2 (Jan. 1, 1982)); *Thomas*, 2023 WL 6164087, at *4.

23    "When a job is a 'composite' — that is, it has significant elements of two or more occupations

24    and therefore has no counterpart in the DOT — the ALJ considers only whether the claimant can

25    perform his past relevant work as actually performed."  *Jesus P. v. Berryhill*, No. EDCV 17-

26    ———————————

27    [4] Plaintiff also argues that the ALJ's finding that Plaintiff could perform this work "as actually performed" cannot be based on substantial evidence.  (Doc. 15-1 at 18.)  Plaintiff's argument is not well founded because the ALJ only determined that Plaintiff could perform her past relevant work "as it is generally

28    performed," and made no finding that she could perform that work as actually performed.  AR 24-25.

1   1633-JPR, 2019 WL 134552, at *3 (C.D. Cal. Jan. 8, 2019).  Indeed, courts in the Ninth Circuit

2   have determined when "the job at issue [i]s a composite job, the ALJ [is] precluded from finding

3   that plaintiff could perform the position as it was generally performed in the national economy."

4   *Thomas*, 2023 WL 6164087, at *6 (quoting *De Romero v. Berryhill*, No. 1:17-cv-01508-JLT,

5   2019 WL 93273, at *10 (E.D. Cal. Jan 3, 2019)).

6           The parties dispute whether Plaintiff's past work should have been considered a

7   composite job.  As noted above, work constitutes a composite job when it has significant

8   elements of two or more occupations and thus has no counterpart in the DOT.  *Goodwill v.*

9   *Comm'r of Soc. Sec.*, No. 1:22-cv-01017-EPG, 2023 WL 3582521, at *2 (E.D. Cal. May 22,

10  2023) (citation omitted); *Jesus P.*, 2019 WL 123552, at *3.  "The Ninth Circuit has not

11  established a bright-line rule for what constitutes 'significant elements' or 'main duties' of work

12  so as to find a composite job."  *Goodwill*, 2023 WL 3582521, at *2; *see also McCullough v.*

13  *O'Malley*, No. CV 23-00298 JMS-KJM, 2024 WL 1209479, at *7 (D. Haw. Mar. 21, 2024)

14  (noting no Ninth Circuit bright-line rule for what constitute "significant elements" or "main

15  duties" of a job to categorize it as composite).  "However, district courts generally consider the

16  'fundamental nature' of the work at issue, focusing on how much time a plaintiff spends doing the

17  tasks claimed to support a composite-job finding."  *Goodwill*, 2023 WL 3582521, at *2.

18  (collecting cases).

19          According to the record, Plaintiff worked as an accounting technician at the California

20  Department of Corrections from June 1999 to March 2005 and as account trainee at Valley State

21  Prison from March 2005 to July 2018.  AR 184.  In her work history report, Plaintiff indicated

22  that she performed the same duties in both jobs, which included processing employee payroll,

23  processing inmate money transactions, researching inmate accounts for errors and corrections,

24  employee customer service, phone contact, and computer use.  AR 185-86.  She estimated that

25  she would walk about 2 hours, stand about 2 hours, and sit about 6 hours each day.[5]  AR 185-86.

26  _____

27  [5] Plaintiff's attorney asked her about the total number of hours spent sitting and standing in her work history report.  The exchange was as follows:

28          Q       Okay just follow-up on the sitting and standing.  The form you filled out says

At the hearing, Plaintiff testified that in her job in accounting at the Department of Corrections she took care of inmates' accounts and used the department program for the accounting unit.  AR 39-40.  She also did customer service, distributing payroll checks twice a month.  AR 40.  She explained that when people would come to the counter, she would have to leave her desk, get up and walk to the counter, and then hand out paychecks.  Also "whenever problems they need with inmates, we would then have to go to the files and look at the files and be moving around."  AR 41.  Plaintiff initially stated that on a typical day she would spend about four hours a day "up and down" on her feet during an eight-hour shift and would lift 25 pounds at the heaviest.  AR 40.  However, in response to questioning from the VE, Plaintiff confirmed that she spent six hours sitting and only lifted 25 pounds infrequently, occasional files. [6]  AR 40.

The VE subsequently characterized Plaintiff's past relevant work as a "payroll clerk, sedentary."  AR 47.  The ALJ then propounded a hypothetical, and the VE testified that the individual would be able to perform Plaintiff's past relevant work.  AR 47-48.  Based on the testimony of the VE, the ALJ found at step four that Plaintiff was able to perform her past relevant job as a payroll clerk as it is generally performed.  AR 24-25.

Plaintiff argues that because a substantial part of her job with the Department of Corrections involved customer service duties performed at the light level, her work was a composite job, and thus the ALJ erred by finding that she could return to her past job as generally

---

sitting for six hours, walking for two and standing for two.  So that would add up to ten hours a day.  Were you working ten-hour days?

A       Sometimes we did, but not very often.

Q       Okay.  So what would you say what was the percentage of the day that you were standing up or walking?

A       I would say – it's so hard because each day was different.  Certain times of the month we were on our feet more and certain times of the month we were sitting more.  I would say maybe 75 precent.  I don't know.  It's hard for me to really say.

AR 41.

[6] "ALJ: Mr. Bell, do you have any questions about her past work?  VOCATIONAL EXPERT:  Yeah, I did.  My note from the file indicated she was sitting six of eight, and the lifting was 25 pounds infrequently, occasional files.  Is that not accurate?  THE WITNESS: Yes, that's accurate."  AR 40.

performed in the national economy.  (Doc. 15-1 at 22.)  The Commissioner counters that the ALJ

properly found that Plaintiff could perform her prior work as a payroll clerk as generally

performed.  Specifically, the Commissioner asserts that (1) the ALJ reasonably relied on the VE's

testimony that her prior work was not a composite job, and (2) there is no indication that Plaintiff

performed any other duty more than she performed her payroll clerk duties.  (Doc. 23 at 7-8.).

The Court agrees with the Commissioner.

First, in response to questioning by Plaintiff's attorney, the VE expressly testified that

Plaintiff's work as a payroll clerk was not a composite job.  AR 48.  The ALJ was entitled to rely

on the testimony of the VE.  *Thomas* 2023 WL 6164087, at *6 ("It was reasonable for the ALJ to

rely on the "inherently reliable" explicit testimony of the vocational expert that Plaintiff's job

was not composite with stocking or inventory work.").

Second, while Plaintiff attempts to create an ambiguity regarding the amount of time

Plaintiff spent on her feet standing or walking, the record reflects Plaintiff's own verification to

the VE that she spent six hours of an eight-hour day (or 75% of the day) sitting and only lifted 25

pounds infrequently, occasional files.  AR 40.  This is consistent not only with testimony

indicating Plaintiff spent 75% of her day sitting (*see* AR 41), but also with her attorney's

recognition at the hearing that Plaintiff spent only 25% of her day performing customer service

duties.[7]  AR 49.  Because the fundamental nature of Plaintiff's work was time spent as a payroll

clerk, the ALJ's decision to designate Plaintiff's past work as payroll clerk without finding a

composite job (AR 24) is supported by substantial evidence. *See Stacy*, 825 F.3d at 570 ("When

Stacy performed that job, he engaged in supervisory duties 70-75 percent of the time. The fact

---

[7] Plaintiff's counsel questioned the VE as follows:

> Q      Okay.  So assuming that the claimant performed her past work.  *For 25 percent*
> *of the day she was doing the customer service*, the aspect where people would come to
> the window, and she would have to go up and help them, would that be considered a
> composite position?

> A      No, I don't believe so.  I mean, that would be part of other duties as assigned.

AR 49 (emphasis added).

that his employer also required him to occasionally do other, non-supervisory tasks does not change the fundamental nature of his work."); *Elias v. Comm'r of Soc. Sec. Admin.*, No. CV-18-00200-TUC-RCC (DTF), 2019 WL 4296779, at *2 (D. Ariz. Sept. 11, 2019) ("The data entry work, being 70%, was the fundamental nature of the work. So, there is substantial evidence that the job listed by the VE and that used in by the ALJ were equivalent as generally performed).

Plaintiff argues that the ALJ could not define her past relevant work according to its least demanding function, i.e., payroll clerk performed at the sedentary level, and that her customer service duties performed at the light level constituted "a very significant--and even the majority share--of her duties." (*See* Doc. 24 at 5; Doc. 15-1 at 19-20.)  To support this argument, Plaintiff relies primarily on *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985), and *Carmickle v. Commissioner of Social Security Administration*, 533 F.3d 1155, 1166 (9th Cir. 2008), which provide that an ALJ may not define past relevant work according to its "least demanding function."  However, *Valencia* and its progeny do not apply when "the least demanding function is a task the claimant actually performed most of the time; and (2) the DOT defines the claimant's past job as requiring only that least demanding function." *Stacy*, 825 F.3d at 570 (concluding that ALJ properly categorized plaintiff's past work as "supervisor" when supervisory duties constituted 70 to 75 percent of job and the DOT classified the past job as purely supervisory).  In this case, the DOT classifies Plaintiff's past job as sedentary work involving the compilation of payroll data, entering data, and maintaining payroll records.  Per the DOT, a payroll clerk:

> Compiles payroll data, and enters data or computes and posts wages, and reconciles errors, to maintain payroll records, using computer or calculator and is described as sedentary work.  Compiles payroll data, and enters data or computes and posts wages, and reconciles errors, to maintain payroll records, using computer or calculator: Compiles payroll data, such as hours worked, sales or piecework, taxes, insurance, and union dues to be withheld, and employee identification number, from time sheets and other records. Prepares computer input forms, enters data into computer files, or computes wages and deductions, using calculator, and posts to payroll records. Reviews wages computed and corrects errors to ensure accuracy of payroll. Records changes affecting net wages, such as exemptions, insurance coverage, and loan payments for each employee to update master payroll records. Records data concerning transfer of employees between departments. May prorate expenses to be debited or credited to each department for cost accounting records. May prepare periodic reports of earnings, taxes, and deductions. May keep records of leave pay and nontaxable

11

wages. May prepare and issue paychecks.

DOT 215.382-014 Payroll Clerk, 1991 WL 671908.  Plaintiff performed her sedentary tasks as payroll clerk more than half the time and for 75% of the day.  The ALJ therefore did not err in classifying Plaintiff's past work.

To the extent Plaintiff argues that her job should have been defined as composite because the performance of customer service duties was not referenced anywhere in the DOT description of payroll clerk (*see* Doc. 24 at 5-6), this argument is not persuasive.  A "particular job does not become composite merely because, as actually performed, the particular job included tasks not generally performed in such a job." *Goodwill,* 2023 WL 3582521, at *2 (quoting *Laurie A. M. v. Kijakazi*, No. ED CV 21-1958-ODW(E), 2022 WL 2610246, at *4 (C.D. Cal. July 8, 2022)).

### B.  Physician Opinion

Plaintiff challenges the ALJ's evaluation of the opinion from Dr. Mario Sablan, Plaintiff's treating orthopedist.  (Doc. 15-1 at 23-27.)

Because Plaintiff applied for benefits after March 27, 2017, her claims are governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. § 404.1520c.  Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors.  20 C.F.R. § 404.1520c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Consistency means the extent to which a

1    medical opinion is "consistent ... with the evidence from other medical sources and nonmedical

2    sources in the claim." 20 C.F.R. § 404.1520(c)(2); *Woods*, 32 F.4th at 792. The Ninth Circuit

3    has clarified that "under the new regulations, an ALJ cannot reject an examining or treating

4    doctor's opinion as unsupported or inconsistent without providing an explanation supported by

5    substantial evidence." *Woods*, 32 F.4th at 792 "The agency must 'articulate ... how persuasive' it

6    finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it]

7    considered the supportability and consistency factors' in reaching these findings." *Id.* (internal

8    citations omitted).

9          Dr. Sablan's Opinion

10         On February 10, 2020, Dr. Sablan completed a Medical Source Statement. AR 357-58.

11   Dr. Sablan identified positive clinical signs, which included reduced range of motion (decreased

12   extension), abnormal gait, muscle spasm, muscle weakness, weight change, swelling, and

13   tenderness. He opined that Plaintiff could lift and carry 10 pounds occasionally, could stand

14   and/or walk 1 hour in an 8-hour day, could stand and/or walk without interruption for 20 minutes,

15   could sit 2 hours in an 8-hour day, could never bend, climb, crouch, kneel, or crawl, could

16   occasionally balance and stoop, could frequently reach, handle, feel, and finger, could

17   occasionally push/pull, flex her neck/head forward, tilt her head back, and turn her neck/head

18   from side to side. Dr. Sablan further opined that Plaintiff would need extra rest periods after

19   every half hour for 10 minutes. AR 357. She had neuro-anatomic distribution of pain, and her

20   reports of pain/fatigue were consistent with her condition. Dr. Sablan also opined that in a typical

21   8-hour workday, Plaintiff's symptoms were likely severe enough to interfere with attention and/or

22   concentration needed to perform even simple repetitive tasks 50% of the time. Plaintiff's

23   impairments also were likely to produce good days and bad days, and she would likely be absent

24   as a result of her impairments or treatment about 4 days per month. AR 358.

25         The ALJ found Dr. Sablan's medical source statement "not persuasive" because it was "an

26   exaggeration of the claimant's limitations and inconsistent with the record." AR 24. The ALJ

27   explained this conclusion, stating as follows:

28         Dr. Sablan opined that the claimant's maximum lifting is 10 pounds, maximum

standing is 1 hour only, maximum sitting is 2 hours, and that the claimant can never bend, crouch, climb, kneel, or crawl.  He also opined to significant manipulative limitations and opined that the claimant cannot concentrate any more than 50% of the time due to pain and would miss more than 4 days of work a month.  Such limitations are clearly overstated, as they are inconsistent with his own physical examination findings, which show some evidence of tenderness, decreased range of motion, and an antalgic gait, but show no evidence of any decreased strength, decreased sensations, or pain complaints so significant as to preclude the ability to concentrate in anyway.  Moreover, he fails to consider the claimant's significant improvement after her right knee surgery and her own report to the consultative examiner that she is able to perform light activities of daily living.  He provides no specific explanation for such restrictive standing or sitting limitations and such limitations are inconsistent with the physical examinations throughout the record.

AR 24.

As to supportability, the ALJ should consider the extent to which a medical source supports his own opinion and explains the objective medical evidence. C.F.R. § 404.1520c(c)(1); *see also Gary P. v. O'Malley*, No. 3:23-cv-00563-AHG, 2024 WL 1376491, at *7 (S.D. Cal. Mar. 29, 2024) ("Supportability examines the relevant objective medical evidence and supporting explanations presented by the source.").  Here, the ALJ found that Dr. Sablan "provide[d] no specific explanation for [the] restrictive standing or sitting limitations." AR 24.  Although it is not stated explicitly by the ALJ, this reasoning implicates the supportability factor as it relates to the supporting explanations presented by the medical source.  20 C.F.R. § 404.1520c(c)(1).  Dr. Sablan's opinion was on a check-the-box-form and included no narrative explanation regarding the opined standing or sitting limitations.  AR 357-58.  An "ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citations omitted).

Plaintiff points out that Dr. Sablan identified positive clinical findings in support of the limitations, including reduced range of motion (decreased extension); abnormal gait; muscle spasm; muscle weakness; weight change; swelling; and tenderness.  (Doc. 15-1 at 24).  However, the ALJ found Dr. Sablan's opined limitations "inconsistent with his own physical examination findings, which show[ed] some evidence of tenderness, decreased range of motion, and an antalgic gait, but show[ed] no evidence of any decreased strength, decreased sensations, or pain

complaints so significant as to preclude the ability to concentrate in anyway."[8] AR 24. For example, Dr. Sablan's treatment notes indicated that post-operatively from at least January 2019 through October 2020, Plaintiff's sensory and motor function of the lower extremities was grossly normal and that from at least May 2019 through January 2020, she was able to participate in normal activities of daily living. AR 21-23, 292-94, 297-300, 301-03, 341-44, 345-49; 350-55, 371-82. There was no evidence of decreased strength in the lower extremities. AR 23.

Additionally, the ALJ determined that Dr. Sablan's opinion failed to consider that Plaintiff had significant improvement after her right knee surgery. AR 24. This determination is supported by substantial evidence from Dr. Sablan's treatment records. *See* AR 338 [March 2019: "Basically, the patient feels that the knee function has returned to normal. The patient's current activity level includes normal activities." ].) It also comports with Plaintiff's own admission of recovery from her right knee replacement. (See Doc. 15-1 at 25 ["Ms. Wescott may have generally recovered from her right knee replacement, as the ALJ noted . . . ."].

In challenging the ALJ's evaluation of Dr. Sablan's opinion, Plaintiff instead points to increasing abnormalities of the left knee, but the cited treatment records do not suggest that Plaintiff was as limited as stated in Dr. Sablan's February 2020 opinion. (Doc. 15-1 at 25, citing AR 371-74.) The ALJ determined that while physical examinations showed some abnormalities in Plaintiff's left knee, there was "nothing so severe, as to preclude a range of sedentary work." AR 22. Plaintiff had some evidence of crepitus, a decreased range of motion, and some effusion, but there was no evidence of any instability, muscle atrophy, decreased sensations, masses, or decreased pulses. AR 22, citing 278-305 [no atrophy, no instability, no masses, sensory and motor function grossly normal, normal pulses], 347-55 [no atrophy, no instability, no masses, grossly normal sensory and motor function, normal pulses], 361-68, 371-82 [no atrophy, no instability, no masses; sensory function grossly normal, normal pulses]. The ALJ also acknowledged Plaintiff's antalgic gait, but found no evidence of a need for, or the persistent use

---

[8] Although the ALJ described Dr. Sablan's opinion as "inconsistent" with his examination findings, the ALJ plainly did not intend to make an inconsistency finding. The ALJ's meaning is clear from context as the ALJ examined the relevant objective medical evidence from Dr. Sablan, which speaks to the supportability of the opinion. C.F.R. § 404.1520c(c)(1).

1  of, an assistive device.  AR 22, citing 278- 304 [use of cane post-operatively], 338-55, 361-68

2  [ambulatory; prescribed custom orthotics], 371-82.

3       Plaintiff argues that there was record evidence in Dr. Sablan's treatment notes of hand

4  pain, decreased grip strength, decreased pinch strength, and decreased median neve sensation.

5  (Doc. 15-1 at 26, citing AR 352.)  However, there is no indication that such evidence had any

6  bearing on Dr. Sablan's opined sitting and standing limitations, nor that the pain precluded

7  Plaintiff's ability to concentrate.  To the extent Plaintiff references treatment notes from Dr.

8  Charlotte Vang (Doc. 15-1 at 26-27), those notes do not relate to the supportability of Dr.

9  Sablan's opinion; that is, they do not address the issue of whether Dr. Sablan's opined limitations

10  were supported by *his own* treatment notes.

11       As to consistency, the ALJ should explain the extent to which the limitations identified by

12  the medical source are inconsistent with other evidence in the record, including the opinions from

13  other medical sources and nonmedical evidence.  *See* 20 C.F.R. § 404.1520c(c)(2); *Woods*, 32

14  F.4th at 792.  The ALJ here found that Dr. Sablan's opinion was inconsistent with Plaintiff's own

15  report to the consultative examiner that she is able to perform light activities of daily living.  AR

16  24.  Plaintiff contends that this determination is not supported by substantial evidence.  However,

17  Plaintiff reported to the consultative examiner that "[w]ith guarding of her joints she can slowly

18  complete her personal needs and perform light activities of daily living."  AR 321.

19       Further, with respect to consistency, the ALJ indicated that Dr. Sablan's restrictive

20  standing or sitting limitations were inconsistent with the physical examinations throughout the

21  record.  AR 24.  For example, at the consultative examination in October 2019, only a few

22  months prior to Dr. Sablan's opinion, Plaintiff was able to walk to the examination room without

23  difficulty, sit comfortably, and slowly rise from the supine position.  Her extremities were warm

24  without cyanosis, clubbing, or edema.  AR 322.  Plaintiff could tandem walk slowly, but needed

25  practice, and she was unable to toe-heel stand.  Plaintiff did not use an assistive device.  Her fine

26  finger dexterity was intact to alternating finger touch and handling small objects.  She has

27  negative seated and supine straight leg raising.  AR 323.  She had no acute muscle spasms, 5/5

28  muscle strength throughout all four extremities, including grip, and intact deep tendon reflexes.

1  AR 324.

2          Based on the above, the Court finds that the ALJ properly evaluated the medical opinion

3  evidence and did not commit reversible error.

4          **C. Subjective Complaints**

5          Plaintiff argues that the ALJ erred in the evaluation of Plaintiff's subjective complaints.

6  (Doc. 15-1 at 30.)

7          In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a

8  two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of*

9  *Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective

10  medical evidence of her impairment that could reasonably be expected to produce some degree of

11  the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step

12  and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding

13  the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

14  Id. at 1015.

15          Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

16  be expected to cause the alleged symptoms, but discounted her statements concerning the

17  intensity, persistence and limiting effects of those symptoms.  AR 21.  The ALJ was therefore

18  required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective

19  complaints.

20          The Court finds that the ALJ provided specific, clear and convincing reasons for

21  discounting Plaintiff's subjective complaints.  First, the ALJ determined that the nature and

22  severity of Plaintiff's alleged pain and limitations were not supported by the objective medical

23  evidence.  AR 21.  Although lack of supporting medical evidence cannot form the sole basis for

24  discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d

25  676, 681 (9th Cir. 2005) (explaining "lack of medical evidence cannot form the sole basis for

26  discounting pain testimony"); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)

27  (concluding that "an adjudicator may not reject a claimant's subjective complaints based solely

28  on a lack of objective medical evidence to fully corroborate the alleged severity of pain").  In this

case, for example, the ALJ considered that with respect to her right knee, Plaintiff's symptoms continued to improve after her right knee replacement, and subsequent to June 2019, there was no evidence of any significant complaints or significant treatment related to her right knee condition. AR 21.  Additionally, the ALJ considered Plaintiff's reports of left knee pain, but noted that her treatment was limited to left knee steroid injections, with evidence of improvement, no evidence of any left knee physical therapy, emergency room visits, or surgery, and no evidence of any abnormal left knee imaging studies.  AR 21-22.  With respect to Plaintiff's reported low back pain, the ALJ observed that an MRI of the lumbar spine performed in August 2019 "showed only minimal findings."  AR 22, citing AR 384 (mild disc desiccation extending from L2-L3 through L5-S1 with "anular bulging without subsequent central canal or neural foraminal narrowing"). The ALJ additionally noted that there was "no evidence of significant treatment for lumbar pain, such as spinal injections, emergency room care, physical therapy, or surgery.  AR 22.  With respect to Plaintiff's reports of right wrist pain, the ALJ noted that an EMG performed on her upper extremities in February 2020, "showed only 'borderline' median mononeuropathy across the left wrist and normal median nerve findings with regard to the right wrist, with no evidence of cervical radiculopathy or any ulnar radial neuropathy in the upper extremities."  AR 23, citing AR 387-89.  The ALJ also considered that since that time, there was "no evidence of any specific or significant treatment such as physical therapy, injections, emergency room care, or surgery related to any carpal tunnel syndrome type symptoms."  AR 23.  Notwithstanding that finding, the ALJ accommodated Plaintiff's carpal tunnel syndrome by limiting her to sedentary lifting and carrying, with additional right handling limitations.  AR 23.

Second, the ALJ considered Plaintiff's ability to engage in her activities of daily living as inconsistent with her testimony.  AR 22.  An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–1113 (9th Cir. 2021); *Burch*, 400 F.3d at 681 (concluding ALJ was permitted to consider daily living activities in analysis of claimant's allegations).  In this instance, the ALJ considered Plaintiff's report to the

consultative examiner that she was able to perform light activities of daily living, albeit slowly.[9]
AR 22, 321 ("she can slowly complete her personal needs and perform light activities of daily
living").  Plaintiff contends that her report to the consultative examiner is not in any way
inconsistent with her hearing testimony.  (Doc. 15-1 at 32.)  In so contending, however, Plaintiff
herself cites testimony that she can only walk 50 feet before needing to sit down, she "has to lay
down a lot of the time," and it is hard for her to hold and grip things.  (*Id.*)  This testimony
appears to be inconsistent with the ability to perform light activities of daily living, albeit slowly.
Moreover, even where a claimant's activities suggest some difficulty functioning, they may be
grounds for discrediting the claimant's testimony to the extent that they contradict claims of a
totally debilitating impairment. *Molina*, 674 F.3d at 1113.

Third, and as noted above, the ALJ considered the effectiveness of treatment related to
Plaintiff's reported knee pain and limitations, citing Plaintiff's return to normal activities
following her right knee replacement and evidence of improvement with cortisone injections to
her left knee.  AR 21.  The effectiveness of medication or treatment is a relevant factor in
determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv),(v);
*Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment
successfully relieving symptoms can undermine a claim of disability.").

**D.  Lay Witness Testimony**

Plaintiff additionally argues that the ALJ committed reversible error by failing to address
third-party testimony from Plaintiff's husband and two daughters, "which, if credited,
corroborates [Plaintiff's] testimony."  (Doc. 15-1 at 29.)

"In determining whether a claimant is disabled, an ALJ must consider lay witness
testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th
Cir. 2009) (quotation omitted).  "[L]ay testimony as to a claimant's symptoms or how an
impairment affects ability to work *is* competent evidence . . . and therefore *cannot* be disregarded
without comment." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)).

---

[9] The ALJ additionally noted Plaintiff's ability to participate in "normal activities" several months after
her right knee replacement, and her reported normal activity levels despite experiencing low back pain.
AR 21-22.

1    As Plaintiff points out, the ALJ failed to articulate how he considered the lay testimony of

2    Plaintiff's husband and daughters.  This was error.  However, "an ALJ's failure to comment upon

3    lay witness testimony is harmless where 'the same evidence that the ALJ referred to in

4    discrediting [the claimant's] claims also discredits [the lay witness's] claims.'"  *Molina v. Astrue*,

5    674 F.3d 1104, 1122 (9th Cir. 2012) (citation omitted).

6    Here, Plaintiff has affirmed that the lay witness statements corroborated Plaintiff's own

7    testimony.  "When a lay witness's testimony is similar to a claimant's subjective complaints, the

8    ALJ's analysis of the latter is equally available to the former."  *Mahnaz M. v. Kijakazi,* No. 22-

9    CV-1729-BGS, 2024 WL 21794, at *8 (S.D. Cal. Jan. 2, 2024); *see also Valentine v. Comm'r*

10   *Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (concluding that because "the ALJ provided

11   clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and

12   because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also

13   gave germane reasons for rejecting [the lay witness's] testimony").  Because the ALJ provided

14   legally sufficient reasons to discount Plaintiff's subjective testimony, these reasons would apply

15   equally to the lay witness testimony.  Accordingly, any error in failing to consider the lay witness

16   testimony is harmless as it was inconsequential to the ultimate nondisability determination.  *See*

17   *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (identifying "harmless error ... exists

18   when it is clear from the record that the ALJ's error was inconsequential to the ultimate

19   nondisability determination") (internal quotation marks and citation omitted).

## CONCLUSION AND ORDER

21   For the reasons stated, the Court finds that the ALJ's decision is supported by substantial

22   evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS

23   HEREBY ORDERED as follows:

24   1.    Plaintiff's motion for summary judgment (Doc. 15) is denied.

25   2.    The Commissioner's cross-motion for summary judgment and request to affirm

26   the agency's determination (Doc. 23) are granted.

27   ///

28   ///

20

1

2        3.       The Clerk of this Court is directed to enter judgment in favor of Defendant

3  Commissioner of Social Security, and against Plaintiff Karen P. Wescott, and to close this case.

4

5  IT IS SO ORDERED.

6     Dated:    **March 6, 2025**                        /s/ Barbara A. McAuliffe

7                                                   UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28